Case No. 24-12936

---

IN THE
UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

CATOOSA COUNTY REPUBLICAN PARTY and JOANNA HILDRETH

*Plaintiffs—Appellants*

v.

CATOOSA COUNTY BOARD OF ELECTIONS AND
VOTER REGISTRATION, TOMMY DAVIS, RON MCKELVY, NINA
CRAWFORD, MARVIN CORNELISON, and TONYA MOORE

*Defendants—Appellees*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA, ROME DIVISION
CASE NO.: 4:24-CV-00095—WMR

---

**BRIEF OF APPELLEES**

PATTY & YOUNG, ATTORNEYS AT LAW

7731 Nashville Street        Christopher M. Harris
Ringgold, Georgia 30736      Ga. Bar No. 567366
(706) 935-9100               C. Chad Young
chrisharris@pattylaw.com     Ga. Bar No. 781732
chadyoung@pattylaw.com
                             *Counsel for Appellees*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26-1(a)3), the following is a complete list of trial judges, attorneys, persons, associations, firms, partnerships, or corporations that have an interest in the outcome of this particular case.

Except for the persons listed below, Appellants properly identified all interested persons in their Appellants' Brief

1. Harris, Christopher M. (Attorney for Appellees)

2. Patty & Young, Attorneys at Law, LLC (Attorneys for Appellees)

3. Young, C. Chad (Attorney for Appellees)

PATTY & YOUNG, ATTORNEYS AT LAW

/s/Christopher M. Harris

7731 Nashville Street
Ringgold, Georgia 30736
(706) 935-9100
chrisharris@pattylaw.com
chadyoung@pattylaw.com

Christopher M. Harris
Ga. Bar No. 567366
C. Chad Young
Ga. Bar No. 781732

*Counsel for Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

The issues on this appeal do not merit oral argument. While the Appellants' claims are novel, the reasons for affirming the district court's dismissal are not. Appellees concur with Appellants; oral argument is not necessary.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................. i

STATEMENT REGARDING ORAL ARGUMENT ................................................ ii

TABLE OF CONTENTS ............................................................................. iii

TABLE OF AUTHORITIES ........................................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 5

STATEMENT OF THE CASE .......................................................................... 6

   A. Statement of Facts ............................................................................ 6

   B. Procedural History ......................................................................... 10

SUMMARY OF ARGUMENT ...................................................................... 13

ARGUMENT .......................................................................................... 14

   I. The Catoosa GOP Lacks Standing to Assert its First Amendment Freedom of Association Claim. ....................................................................... 14

      A. The Catoosa GOP has not asserted a concrete injury. ................... 14

      B. Any First Amendment injury suffered by the Catoosa GOP is not fairly traceable to the Board of Elections. ........................................... 19

   II. The Catoosa GOP has failed to state a *Monell* Claim against the Catoosa County Board of Elections, its Members, and Ms. Moore in their official capacities. ................................................................................... 21

   III. Ballot Questions are government speech, not private speech, and therefore not subject to First Amendment scrutiny. ......................................... 25

   IV. The individually named defendants are entitled to both qualified and absolute immunity. .......................................................................... 32

      A. The individually named defendants are entitled to qualified immunity. ... 32

iii

    B.   The members of the Board of Elections are entitled to Absolute Immunity for any act related to the April 2 hearing. ...................................................37

CONCLUSION ...................................................................................................39

CERTIFICATE OF COMPLIANCE ......................................................................41

CERTIFICATE OF SERVICE ...............................................................................42

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...........................................................35

*Ariz. State Legis. v. Ariz. Indep. Redistricting Comm 'n,* 576 U.S. 787 (2015).......28

*Beshers v. Harrison*, 495 F.3d 1260 (11th Cir. 2007) ..............................................34

*Bootery, Inc. v. Cumberland Creek Props, Inc.*, 271 Ga. 271 (1999).......................21

*Burson v. Freeman,* 504 U.S. 191 (1992) .................................................................30

*California Democratic Party v. Jones*, 530 U.S. 567 (2000) .......................... 16, 36

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Ath. Ass'n,* 942 F.3d 1215 (11th

Cir. 2019)...................................................................................... 27, 28, 29

*Carr v. Tatangelo*, 338 F.3d 1259 (11th Cir. 2003)..................................................32

*Catoosa County Republican Party et al. v. Henry et al.* 319 Ga. 794 (2024) ...........7

*Chabad Chayil, Inc. v. School Board of Miami-Dade County, Florida*, 48 F.4th 1222

(11th Cir. 2022) .............................................................................. 21, 22

*Cleavinger v. Saxner*, 474 U.S. 193 (1985) ...................................................... 37, 38

*Coffin v. Brandau*, 642 F.3d 999 (11th Cir. 2011)....................................................36

*Duke v. Massey*, 87 F.3d 1226 (11th Cir. 1996) ................................................ 17, 36

*Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. 214 (1989)....31

*Festa v. Santa Rosa County, Fla.*, 413 Fed. App'x 182 (11th Cir. 2011) ...............35

1

*Geary v. Renne,* 914 F.2d 1249 (9th Cir. 1990) .......................................................28

*Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003)...................................................33

*Gundy v. City of Jacksonville,* 50 F.4th 60, (11th Cir. 2022) ..................................29

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..............................................................32

*Hope v. Pelzer*, 536 U.S. 730 (2002) .......................................................................35

*Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821 (11th Cir. 1997)......35

*Johanns v. Livestock Mktg. Ass'n,* 544 U.S. 550 (2005) .........................................26

*Leake v. Drinkard,* 14 F.4th 1242 (11th Cir. 2021) ............................... 26, 27, 28, 29

*Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) ......................................... 32, 33, 34

*Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992) .....................................................19

*Marsh v. Butler County Ala.*, 268 F.3d 1014 (11th Cir. 2001) .................................32

*Martinez v. City of Opa-Locka*, 971 F.2d 708 (11th Cir. 1992) ...............................22

*Mech v. Sch. Bd. of Palm Beach Cnty.,* 806 F.3d 1070 (11th Cir. 2015) .................27

*Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005)..................................36

*Minn. Voters All. v. Mansky,* 585 U.S. 1 (2018) ......................................................31

*Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978) ......................21

*Morro v. City of Birmingham*, 117 F.3d 508 (11th Cir. 1997)..................................22

*Nolin v. Isbell*, 207 F. 3d 1253 (11th Cir. 2000).......................................................32

*Pierson v. Ray*, 386 U.S. 547 (1967) .......................................................................37

*Pleasant Grove City v. Summum,* 555 U.S. 460 (2009)...........................................28

*Reichle v. Howards*, 566 U.S. 658 (2012) ...............................................................36

*Rich v. Dollar*, 841 F.2d 1558 (11th Cir. 1988)......................................................33

*Saucier v. Katz*, 533 U.S. 194 (2001) ......................................................................34

*Sierra v. City of Hallandale Beach*, 996 F.3d 1110 (11th Cir. 2021)................ 14, 15

*Storer v. Brown,* 415 U.S. 724 (1974) ......................................................................30

*Sullivan v. Bunnell*, 340, Ga. App. 283 (2017) ................................................. 20, 21

*Timmons v. Twin Cities Area New Party,* 520 U.S. 351 (1997) ..............................31

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.,* 576 U.S. 200 (2015)... 28, 29

*Youmans v. Gagnon*, 626 F.3d 557 (11th Cir. 2010) ................................................34

**Statutes**

O.C.G.A. § 15-1-4....................................................................................................20

O.C.G.A. § 21-2-193.................................................................................................17

O.C.G.A. § 21-2-284.................................................................................................30

O.C.G.A. § 21-2-413.................................................................................................30

O.C.G.A. § 21-2-414.................................................................................................30

O.C.G.A. § 21-2-6............................................................................................. passim

O.C.G.A.§ 21-2-153...................................................................... 6, 18, 33

**Other Authorities**

Dina Conlin, Note, *Ballot Initiative in Massachusetts: The Fallacy of Direct Democracy,* 37 Suffolk U.L. Rev. 1087 (2004).......................................27

Nan D. Hunter, *Varieties of Constitutional Experience: Democracy and the Marriage Equality Campaign,* 64 UCLA L. Rev. 1662, 1672-73 .........................27

Nicholas Ansel, *Advancing Criminal Reform Through Ballot Initiatives,* 53 Ariz. St. L.J. 273 (2021).......................................................................27

**Constitutional Provisions**

U.S. Const. art. III, § 2 ...........................................................................14

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

I.      Whether a county level political party has standing to assert a First Amendment Freedom of Association claim when the county level political party does not qualify or endorse candidates placed on a primary ballot.

II.     Whether partisan ballot questions processed by a local board of elections and the Georgia Secretary of State for placement on a primary ballot implicates the Freedom of Speech Clause of the First Amendment.

## STATEMENT OF THE CASE

### A. Statement of Facts

### Catoosa GOP v. Candidates

Plaintiff/Appellant Catoosa County Republican Party is the county level party organization for the Georgia Republican Party, and Plaintiff/Appellant Joanna Hildreth is the current chair of the Catoosa County Republican Party (hereinafter Appellant Catoosa County Republican Party and Appellant Hildreth may collectively be referred to as the "Catoosa GOP"). [R. 10-11]. During the week of qualifying for Georgia's May 21, 2024, General Primary (the "Primary"), four individuals (the "Candidates") seeking county office attempted to qualify through the Catoosa GOP pursuant to O.C.G.A.§ 21-2-153(b) as Republican candidates for various partisan county commission seats up for election in 2024. [R. 15]. The Catoosa GOP, however, refused to qualify the Candidates because certain, unknown members of the Catoosa GOP do not believe the Candidates are Republicans, and therefore the Candidates were unable to qualify for the Primary through the Catoosa GOP as provided in O.C.G.A. § 21-2-153(b). [R. 16].

Because the Candidates were unable to qualify through the Catoosa GOP, the Candidates filed suit in the Catoosa County Superior Court against the Catoosa GOP

and its officers. [R. 17-18, see specifically n. 4]. On March 8, 2024, the Candidates

sought and received an order from the Catoosa County Superior Court (the "March

8 Order") directing Appellees Catoosa County Board of Elections and Voter

Registration[1] (hereinafter all Appellees may collectively be referred to as the "Board

of Elections") to qualify the Candidates as Republicans for the Primary. [R. 17].

Acting pursuant to the March 8 Order, the Board of Elections qualified the

Candidates as Republican candidates for local office. [R. 17]. A true and correct copy

of the March 8 Order is attached as Exhibit "A". The Catoosa GOP immediately

appealed the March 8 Order seeking, among other things, the extraordinary remedy

of having the Candidates removed from the Primary ballot. On September 17, 2024,

the Georgia Supreme Court dismissed the Catoosa GOP's appeal of the March 8

Order. *See Catoosa County Republican Party et al. v. Henry et al.*, 319 Ga. 794

(2024).

Soon after the Board of Elections qualified the Candidates pursuant to the

March 8 Order, various electors in Catoosa County (including Appellant Hildreth)

---

[1] Of the five (5) member Catoosa County Board of Elections, Tommy Davis, Ron McKelvy, Nina Crawford, and Marvin Cornelison are named as Appellees/Defendants in this lawsuit. The fifth defendant, Tonya Moore, is a full-time employee of the Board of Elections and is the "elections director" for Catoosa County.

filed elector challenges pursuant to O.C.G.A. § 21-2-6. [R. 18-19]. Abiding by the provisions of O.C.G.A. § 21-2-6 (b), the Board of Elections then held a hearing on April 2, 2024, to address the electors' challenges to the Candidates' qualifications for office. [R. 18-19]. At the conclusion of the hearing, the Board of Elections, by a vote of 4-1, ruled that the Candidates were properly qualified and would remain listed as Republican candidates on the Primary ballot. [R. 19-20]. After the Board of Elections' ruling, several electors, including Appellant Hildreth, filed a Petition for Review in the Catoosa County Superior Court. The Petition for Review, however, was soon dismissed. On May 17, 2024, the Catoosa County Superior Court dismissed all elector challenges (including the challenge of Appellant Hildreth) appealed from the April 2 hearing. A true and correct copy of the May 17, 2024 Superior Court Order dismissing the elector challenges is attached hereto as Exhibit "B". Notably, Appellant Hildreth did not appeal the dismissal of her elector challenge.

### Ballot Questions

On the same day the Catoosa County Superior Court ordered the Board of Elections to qualify the Candidates, Appellants Hildreth and the Catoosa GOP, presumably in response to the March 8 Order, submitted handwritten ballot questions (the "Ballot Questions") to Appellee Tonya Moore, Catoosa County

Elections Director, for placement on the Primary ballot. [R. 17]. The Ballot Questions referred to the Candidates by name and strongly suggested the Candidates were "anti-Trump Democrats". The Ballot Questions may be found in their entirety in the Record at 54-55.

One week later, Appellant Hildreth, and by extension the Catoosa GOP, received an email from the Georgia Secretary of State's Office stating that the "Secretary of State cannot publish party questions on the ballot that contain the names of candidates or commentary regarding those candidates, as that constitutes unlawful electioneering." [R. 206-211]. The Secretary of State then gave the Catoosa GOP the option of submitting new ballot questions by "5:00 p.m. on March 18." The Catoosa GOP made no attempt to submit substitute ballot questions pursuant to the Secretary of State's email. [R. 206].

Importantly, the Catoosa GOP concedes that the "Secretary of State's office contacted the [Catoosa GOP] with concerns about the content of the Ballot Questions." [R. 26]. Furthermore, the Catoosa GOP claims they "notified" the Secretary of State (a non-party in this action) "that they had not changed their request for the Ballot Questions to be placed on the Catoosa County Republican primary ballot as submitted." [R. 26]. The Catoosa GOP, however, makes no allegation that they ever communicated with any member of the Board of Elections about their

objection to the Secretary of State's characterization of the Ballot Questions as unlawful electioneering or their insistence that the Ballot Questions, as originally submitted on March 8, should appear on the Primary ballot.

## B. Procedural History

*The Complaint*. The Catoosa GOP filed their Complaint on April 5, 2024, in the United States District Court for the Northern District of Georgia, Rome Division. [R. 10]. The Catoosa GOP named as defendants four of the five members of the Catoosa County Board of Elections and Voter Registration, to wit: Tommy Davis, Ron McKelvy, Marvin Cornelison, and Nina Davis. [R. 10]. The Catoosa GOP also named as a defendant Elections Director Tonya Moore, a full-time county employee who reports to the Board of Elections but is not a member of the Board. [R. 10].

The Complaint alleges two § 1983 claims against all individual Appellees and the collective Board of Elections and Voter Registration. Count I alleges that the Board of Elections violated the Appellants' right of "Freedom of Association" by following the March 8 Order and qualifying the Candidates for the Primary. Count II alleges that the Board of Elections violated the Catoosa GOP's Freedom of Speech rights by not allowing the Ballot Questions to appear on the Catoosa County Republican Primary ballot due to the Georgia Secretary of State deeming the

questions as unlawful electioneering. Neither count specifically identifies which Appellee(s)/Defendant(s) is/are liable under each claim.

*__The Board of Elections' Motion to Dismiss__*. The Board of Elections moved to dismiss the Catoosa GOP's Complaint on May 3, 2024, under Federal Rule of Civil Procedure 12(b)(6). The Board of Elections argued in support of its Motion that the Catoosa GOP lacked standing to assert either First Amendment Claim.[2] Specifically, neither § 1983 claim brought by the Catoosa GOP asserts a particularized injury fairly traceable to the Board of Elections. Moreover, neither claim properly asserts a municipal liability claim under *Monell*. The Board of Elections also asserted the defenses of qualified and absolute immunity for any claims brought against the Board of Elections in their individual capacities. The Catoosa GOP responded in opposition to the Motion to Dismiss on May 17, 2024.

*__The District Court's Order__*. On September 9, 2024, the district court granted the Board of Elections' Motion to Dismiss. [R. 75]. The district court agreed that the Catoosa GOP lacked standing to bring its Freedom of Association Claim, although

---

[2] The Board also argued in its Motion to Dismiss that the federal district court should apply the *Younger* abstention doctrine because two state court cases involving the same issues were then pending. Because the two state court cases have now been disposed of, *Younger* is no longer applicable.

11

its analysis differed from the Board of Elections' arguments contained in the Motion to Dismiss. The district court concluded the Catoosa GOP's Freedom of Association Claim must be dismissed because:

> "a county political party's associational rights are not injured 'in a personal and individual way' where the party does not qualify or endorse the candidates and particularly where state law provides no discretionary authority for the party to deny the candidates access to the ballot."

[R. 85].

The district court also dismissed the Catoosa GOP's Freedom of Speech Ballot Questions Claim because there is no First Amendment Protection of government speech, and the Ballot Questions at issue meet all three criteria—history, endorsement, and control—for concluding the Ballot Questions are in fact government speech. In its Order, the district court agreed with the Georgia Secretary of State's assessment that the Ballot Questions the Catoosa GOP sought to have placed on the Primary ballot constituted unlawful electioneering. [R. 90]. Specifically, Judge Ray noted that "[t]here is no doubt that the Secretary of State correctly identified the Plaintiffs' proposed ballot questions as an attempt at influencing voters by strongly implying that the Candidates are 'anti-Trump Democrats'". [R. 90]. Furthermore, the district court saw "no reason to believe that

Georgia's long-standing prohibition on campaigning within a polling place would not apply to a political party's ballot questions." [R. 91].

## SUMMARY OF ARGUMENT

The Court should affirm the dismissal of the Appellants' Complaint for several reasons.

First, the Catoosa GOP and Hildreth lack standing to assert a Freedom of Association Claim against the Board of Elections. As the court below recognized, the Catoosa GOP never actually qualified or endorsed the Candidates and therefore the Catoosa GOP cannot show forced or compelled association with those Candidates. Simply put, there was no injury particularized to the Catoosa GOP.

Second, even if the Catoosa GOP could show a particularized injury, the injury cannot be "fairly traceable" to the Board of Elections. The Catoosa GOP recognizes and admits that the Board of Elections qualified the Candidates only because the Catoosa County Superior Court ordered the Board of Elections to qualify the Candidates.

Third, the Catoosa GOP plaintiffs have not properly asserted a municipal liability claim under *Monell*. The Catoosa County Superior Court—not the Board of Elections or its employees—crafted the policy that landed the Candidates on the Primary ballot against the wishes of the Catoosa GOP. Moreover, any claim based

on the Board of Elections decision of April 2, 2024, fails because that decision is immediately appealable to the Catoosa County Superior Court and cannot be the basis for municipal liability under *Monell*.

Also, this Court should affirm dismissal of the Catoosa GOP's Freedom of Speech Claim because ballot questions permitted under state law do not trigger First Amendment protection. Indeed, ballot questions are not private speech; ballot questions are government speech. And in any event, there is no First Amendment right to engage in unlawful electioneering inside a polling location.

Finally, all individually named Appellees/Defendants are entitled to qualified and/or absolute immunity.

## ARGUMENT

### I. The Catoosa GOP Lacks Standing to Assert its First Amendment Freedom of Association Claim.

### A. The Catoosa GOP has not asserted a concrete injury.

Article III of the Constitution mandates that federal courts only have jurisdiction over "Cases" and "Controversies". U.S. Const. art. III, § 2. Well settled federal jurisprudence requires plaintiffs to demonstrate three (3) elements to establish standing: (1) injury in fact; (2) causation; and (3) redressability. *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021).

Specifically, the "injury in fact" element requires plaintiffs to demonstrate a "concrete and particularized injury." *Id*. at 1113. And an "injury is particularized when it 'affect[s] the plaintiff in a personal and individual way.'" *Id*. Further, "[t]o be concrete, the injury must be 'real, and not abstract'" and must affect the "plaintiff in a personal and individual way." *Id*. The Catoosa GOP argues that it was injured by the Board of Elections "using government action to control the associations" of the Catoosa GOP and "applying the law to force association" with the Candidates. [R. 24]

Such sweeping, generalized allegations, however, do not rise to the level of asserting a "concrete and particularized injury". The Catoosa GOP further argues more broadly that a series of Eleventh Circuit and Supreme Court cases dealing with political parties and primaries affords the Catoosa GOP the unfettered First Amendment right to privately vet local candidates for placement on a primary ballot—and, of course, the Catoosa GOP also necessarily argues that if Georgia law conflicts with their First Amendment interpretation (and it does), then any such statute must be held unconstitutional.[3] [See Appellants' Brief, pp. 20-21]

---

[3] The Catoosa GOP makes no effort to explain why a county board of elections is subject to § 1983 liability for an unconstitutional state statute.

The Catoosa GOP's reliance on a string of Eleventh Circuit and United States Supreme Court cases is misplaced. In *California Democratic Party v. Jones*, 530 U.S. 567 (2000), the United States Supreme Court summarized a litany of previous Supreme Court cases (including those cited by Appellants) that recognize the right of states to regulate political parties' internal processes so long as they act within limits imposed by the Constitution. *Id*. at 573. In short, and as noted by the district court below in its order of dismissal, the Appellants' associational rights are not absolute. No Supreme Court case has held that a political party has "unfettered control of who can appear on the ballot and how." [R. 79] Indeed, the *California Democratic Party v. Jones* opinion specifically—and broadly—recognized a state's compelling interest in regulating the primary system:

> "We have recognized, *of course*, that States have a major role to play in structuring and monitoring the election process, including primaries. [Internal Citations Omitted] We have considered it "too plain for argument", for example, that a State may require parties to use the primary format for selecting their nominees in order to assure that *intraparty competition is resolved in a democratic fashion*."

*California Democratic Party*, 530 U.S. at 572 (emphasis added).

The Catoosa GOP also mistakenly relies on a trio of Eleventh Circuit cases involving presidential candidate David Duke's attempt to force his way on to the 1992 Georgia Presidential Primary Ballot. *See Duke v. Massey*, 87 F.3d 1226 (11th

Cir. 1996) (hereinafter "*Duke III*"). In *Duke III*, this Court recognized that Duke was "correct in identifying his First and Fourteenth Amendment interests", but this Court ultimately held those "interests do not trump the Republican Party's right to identify its membership based on political beliefs *nor* the state's interests in protecting the Republican Party's right to define itself. *Id*. at 1233. The *Duke* opinion further recognized that states "have an interest in regulating the time, place and manner of elections" and a "responsibility emanating from that interest is the state's duty to determine how many names will appear on a primary ballot." *Id*. Simply put, "states have a significant interest in structuring and regulating elections in order to facilitate order, honesty and fairness." *Id*. Moreover, and most importantly, "[c]ommon sense dictates that states must regulate elections and that the regulations will necessarily impose some burden upon voters *and* parties." *Id*. (emphasis added)

There are, however, similarities in the *Duke* cases and this case—but those similarities undermine the Catoosa GOP's claims here. Both cases involve Georgia statutes that regulate the way candidates qualify to appear on a primary ballot. David Duke did not appear on Georgia's 1992 Presidential Primary Ballot because O.C.G.A. § 21-2-193 set forth precise rules governing how presidential candidates are selected to appear on a ballot during a presidential preference primary. And in

*Duke*, this Court held that the Georgia statute governing presidential preference primaries was constitutional.

In this case, this Court should also hold that the Georgia statute governing the qualification of candidates for local office is constitutional. The operative statutory language provides that "all candidates for party nomination in a state or county primary *shall* qualify as such candidates in accordance with the *procedural* rules of their party. . ." O.C.G.A. § 21-2-153(b) (emphasis added). The term "procedural rule" is not further defined in the statute, but the Catoosa GOP's interpretation of the term "procedural rule" is simply not reasonable and has no basis in law. *Black's Law Dictionary* defines "rule of procedure" as a "judicial rule or manner for carrying on a civil lawsuit or criminal prosecution". The Catoosa GOP's reasoning for not qualifying the Candidates is entirely substantive, not procedural. The Catoosa GOP's complaint specifically states that it "does not believe the Independent Candidates are Republicans, or that they share the values, principles, and policy goals of the Party. . .[R. 16]. Such an admission is not representative of a procedural rule, but the implementation of a substantive and ideological policy, which is expressly prohibited by O.C.G.A. § 21-2-153(b).

Because Georgia law compels the Catoosa GOP to qualify *all* candidates for local office and the Catoosa GOP otherwise failed to allege any other cognizable

injury, this Court should affirm the district court's order of dismissal. Indeed, the Catoosa GOP never qualified or endorsed the Candidates, nor did any member or employee of the Board of Elections compel or force the Catoosa GOP to qualify the Candidates. In fact, the March 8 Order pointedly removed the Catoosa GOP from the candidate qualification process.

This Court should affirm the lower court's order dismissing the Catoosa GOP's Complaint for failure to demonstrate a cognizable injury.

**B. Any First Amendment injury suffered by the Catoosa GOP is not fairly traceable to the Board of Elections.**

Even assuming, *arguendo,* the Catoosa GOP has asserted a cognizable injury, any injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992).

Here, the Catoosa GOP has failed to allege an injury in fact that is fairly traceable to the Board of Elections. In fact, the Catoosa GOP admit in their Complaint that any alleged constitutional violation is not traceable to the Board of Elections but instead to the March 8 Order. [R. 16-17]. Specifically, footnote 4 to paragraph 19 of the Complaint acknowledges that the Catoosa GOP "believed that the reason" the Board of Elections qualified the Candidates "was due to an Order

(currently under appeal) entered in a lawsuit" between the Candidates and the Catoosa GOP. [R. 16-17].[4]

Despite acknowledging the Catoosa County Superior Court ordered the Board of Elections to qualify the Candidates to appear as Republicans on the Primary ballot, the Catoosa GOP suggests that the Board of Elections were under no legal obligation to follow the March 8 Order because the Board of Elections were not parties to that civil action. Georgia law, however, provides broad powers to superior courts to enforce its orders, even against nonparties. Specifically, O.C.G.A. § 15-1-4(a)(3) provides that the "powers of the several courts to issue attachments and inflict summary punishment for contempt of court shall extend to only cases of. . . [d]isobedience or resistance by any officer of the courts, party, juror, witness, or *other person or persons* to any lawful writ, process, order, rule, decree, or command of the courts." *Id*. (emphasis added). In *Sullivan v. Bunnell*, 340, Ga. App. 283 (2017), the Georgia Court of Appeals reaffirmed well settled Georgia law that provides "in Georgia, the violation of a court's order by one who was not a party to the proceedings can be punished as contempt 'if it is alleged and proved that the

_____

[4] The appeal from the March 8 Order is no longer on appeal. The Georgia Supreme Court dismissed the Catoosa GOP's attempts to reverse the March 8 Order. *See Catoosa County Republican Party et al. v. Henry at al.*, 319 Ga. 794 (2024).

contemnor had *actual* notice of the order for disobedience of which he is sought to be punished.'" *Id*. at 290 (quoting *Bootery, Inc. v. Cumberland Creek Props, Inc.*, 271 Ga. 271-272 (1999)).

Because the Catoosa GOP admits the alleged Freedom of Association injury is not attributable to the Board of Elections, the Freedom of Association claim should be dismissed.

## II. The Catoosa GOP has failed to state a *Monell* Claim against the Catoosa County Board of Elections, its Members, and Ms. Moore in their official capacities.

A local government may be held liable under § 1983 *only* when a constitutional violation was inflicted pursuant to that local government's policy or custom. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). A "plaintiff can establish municipal liability under Monell in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. School Board of Miami-Dade County, Florida*, 48 F.4th 1222, 1229 (11th Cir. 2022).

Though a "single decision by an official policymaker can establish the existence of an unconstitutional municipal policy" *Martinez v. City of Opa-Locka*, 971 F.2d 708, 713 (11th Cir. 1992), the Eleventh Circuit has "set forth guiding principles to evaluate whether the decision of a single official is sufficient to give rise to municipal liability, among them:

> (1) Municipalities have section 1983 liability only for acts officially sanctioned or ordered by the municipality. (2) Only those municipal officials who have final policymaking authority may subject the municipality to section 1983 liability for their actions. (3) The determination of whether or not a particular official has final policymaking authority is governed by state law, including valid local ordinances and regulations. (4) The challenged action must have been taken pursuant to a policy adopted by the official or officials responsible for making policy in that particular area of the city's business, as determined by state law."

*Chabad Chayil, Inc.*, 48 F.4th 1222, 1229 (11th Cir. 2022). Finally, and importantly here, the Eleventh Circuit has repeatedly "recognized and given effect to the principle that a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997).

In their Complaint, the Catoosa GOP alleges two unconstitutional acts by the Board of Elections that purportedly violate the Catoosa GOP's right of Freedom of

Association. The first alleged wrongful act occurred on March 8, 2024, when the Board of Elections qualified the Candidates to appear as Republicans on the partisan Primary ballot. [R. 16-17]. The Catoosa GOP does not dispute that the Candidates were so-qualified pursuant to, and because of, the March 8 Order. [R. 16-17]. The second alleged wrongful act occurred on April 2, 2024, when the Board of Elections conducted a public hearing to address elector challenges filed pursuant to O.C.G.A. § 21-2-6. [R. 20]. At the hearing, the Board of Elections handed down a ruling finding that the Candidates were properly qualified. [R. 20].

Neither act alleged by the Catoosa GOP supports municipal liability under *Monell*. In fact, it is undisputed—and bears repeating—that the Board of Elections acted pursuant to the March 8 Order in qualifying the Candidates. [R. 16-17]. The Catoosa County Superior Court crafted the "policy", not the Board of Elections or any of its members or officials. The March 8 Order states in pertinent part as follows:

> "The Court hereby utilizes this existing statutory process to craft a remedy for [the Candidates]. Pursuant to the order previously announced in open court at 8:45am, the Court hereby memorializes that oral order and **ORDERS** that each of the [Candidates] is entitled to qualify with the Catoosa County election superintendent at their offices pursuant to O.C.G.A. § 21-2-153(c)(2) as if the county political party had not provided sufficient notice and as if the three-day notice had been provided. The Court crafts this injunction so that the [Candidates] can be listed as candidates on the May 2024 Republican general primary

> ballot if they qualify with the superintendent as outlined here before the close of qualifying at noon today."

[Exhibit A]. The Board of Elections' act of following the March 8 Order cannot give rise to a municipal claim under *Monell*. The act of qualifying the Candidates pursuant to the March 8 Order does not meet any of the guiding *Monell* principles outlined above. The qualification of the Candidates was not "sanctioned or ordered by the municipality" and no member or staff member of the Board of Elections acted to qualify the Candidates until the March 8 Order was announced by Catoosa County Superior Court Judge Don Thompson. The "challenged action" was not taken pursuant to the to a "policy adopted by the official or officials responsible for making policy". In short, the Board of Elections have been sued for abiding by and following a court order, and following a court order cannot give rise to a claim under *Monell*.

To the extent the Catoosa GOP rests their Freedom of Association Claim on the Board of Elections' decision not to disqualify the Candidates at the April 2 hearing, such reliance is also misplaced. Subsection (e) O.C.G.A. §21-2-6 affords the electors or the candidates "the right to appeal the decision of the superintendent by filing a petition in the superior court. . .within ten days. . ." Further, the statute also provides the superior court "may reverse or modify the decision if substantial rights of the appellant have been prejudiced. . ." O.C.G.A. § 21-2-6(e).

Here, because the April 2, 2024, Board of Elections decision is subject to immediate superior court review, that decision cannot be the basis of a claim for municipal liability under *Monell*. Moreover, Plaintiff/Appellant Hildreth followed (or at least attempted to follow) the appellate procedure detailed in subsection (e) of the elector challenge statute and appealed the Board of Elections April 2 decision to the Catoosa County Superior Court, where it was subsequently dismissed. [Ex. B]. Indeed, the Board of Elections April 2 hearing is subject to more than "meaningful administrative review" as required in *Morro*. The elector challenge statute expressly provides for immediate superior court review of the decision and Appellant Hildreth availed herself of that right to have the Catoosa County Superior Court review the April 2 decision. Remarkably, Appellant Hildreth did not appeal the Catoosa County Superior Court's decision to dismiss her elector challenge appeal.

Therefore, the Catoosa GOP has failed to state a *Monell* claim in Count I and therefore Count I should be dismissed as to the Catoosa County Board of Elections, its members, and Ms. Moore in their official capacities.

### III.  Ballot Questions are government speech, not private speech, and therefore not subject to First Amendment scrutiny.

The second count in the Catoosa GOP's Complaint alleges a violation of its First Amendment right of Freedom of Speech (the "Freedom of Speech Claim")

based on the Board of Elections' alleged failure to include the Ballot Questions on the Primary ballot. The Freedom of Speech Claim, however, fails as a matter of law and should be dismissed.

The following analysis is taken, with slight variations, from the district court's order of dismissal:

The Catoosa GOP alleges that the Board of Elections violated their First Amendment right to free speech by censoring the requested Ballot Questions. The threshold question, however, is this Court must first determine whether the ballot questions are government speech because the First Amendment only "restricts government regulation of private speech; it does not regulate government speech." *Leake v. Drinkard,* 14 F.4th 1242, 1247-48 (11th Cir. 2021) ("When the government speaks, it may refuse to endorse or freely remove speech of which it disapproves."); *Johanns v. Livestock Mktg. Ass'n,* 544 U.S. 550, 553 (2005) ("the Government's own speech ... is exempt from First Amendment scrutiny"). Although there is no precise test for government speech, courts have typically looked at three factors: "history, endorsement, and control." *Id.*

In this case, all three of these factors indicate that ballot questions are government speech. *See id.* (noting that a court's review will "almost always result in a finding that the speech is that of the government" where all three factors weigh

in favor). "The first factor-history-directs [this Court] to ask whether the type of speech under scrutiny has traditionally communicated messages on behalf of the government." *Id.; Mech v. Sch. Bd. of Palm Beach Cnty.,* 806 F.3d 1070, 1075-76 (11th Cir. 2015) ("A medium that has long communicated government messages is more likely to be government speech"). This factor is easily met here. States have historically used questions, referendums, or initiatives on the ballot to gauge public interest in proposals to enact or repeal laws or constitutional amendments. See Nan D. Hunter, *Varieties of Constitutional Experience: Democracy and the Marriage Equality Campaign,* 64 UCLA L. Rev. 1662, 1672-73; Nicholas Ansel, *Advancing Criminal Reform Through Ballot Initiatives,* 53 Ariz. St. L.J. 273, 276 (2021); Dina Conlin, Note, *Ballot Initiative in Massachusetts: The Fallacy of Direct Democracy,* 37 Suffolk U.L. Rev. 1087, 1090-94 (2004) (providing a backdrop of the adoption of ballot initiatives in the United States from its inception in South Dakota in 1898).

"The second factor—endorsement—asks whether 'observers reasonably believe the government has endorsed the message.'" *Leake,* 14 F.4th at 1248; *Cambridge Christian Sch., Inc. v. Fla. High Sch. Ath. Ass'n,* 942 F.3d 1215, 1233 (11th Cir. 2019) (clarifying that the "question on the endorsement factor is whether the speech would be 'closely identified in the public mind with the government'"). Notably, the ballot questions are answered as citizens vote in an election—a

government-organized (and funded) event that is central to our democracy. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Ath. Ass'n,* 942 F.3d 1215, 1233 (11th Cir. 2019) (noting that it is relevant whether the speech is "tied to [the] government spatially"); *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm 'n,* 576 U.S. 787, 823 (2015) (referring to voting by ballot as a "core aspect[ ]of the electoral process regulated by state constitutions"); *cf Pleasant Grove City v. Summum,* 555 U.S. 460, 472 (2009) (concluding that monuments in public parks were identified with the government because "parks are often closely identified in the public mind with the government unit that owns the land").

And, while the underlying facts of this case occurred during a Republican primary election, "(t]he fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message .... " *Walker v. Texas Div., Sons of Confederate Veterans, Inc.,* 576 U.S. 200, 217 (2015). This is particularly true where "the government is organizing and funding the event through which the message is communicated." *Leake,* 14 F.4th at 1249-50. The fact that a reasonable observer could assume that the Republican Party endorsed the questions does not change the fact that observers would also assume that the Government has endorsed any question contained on the primary ballot. *See, e.g., Geary v. Renne,* 914 F.2d 1249, 1252 (9th Cir. 1990) ("Although the government

does not author [voters' pamphlets prepared and distributed by the government with a sample ballot], it has an interest in the messages that it assembles, publishes, and distributes and may therefore appear to approve."); *cf Gundy v. City of Jacksonville,* 50 F.4th 60, 78-79 (11th Cir. 2022) ("the City Council's invocation can be closely identified in the public mind with the government because the City Council organizes the invocation, it provides the venue for the invocation, it selects the speaker for the invocation, and then it begins its business meeting"); *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.,* 576 U.S. 200,212 (2015) (noting that observers would assume the government endorsed the designs on license plates because it bears the state name at the top and the state "issues the plates, regulates their disposal, and owns the designs"); *Leake,* 14 F.4th at 1249 (concluding that "[o]bservers would have reasonably believed the government endorsed" a parade's message because it advertised and promoted the parade while identifying itself as a co-host).

The third factor, control, "asks whether the relevant government unit 'maintains direct control over the messages conveyed' through the speech in question." *Leake,* 14 F.4th at 1248. "[C]omplete control is not required." *Cambridge Christian Sch.,* 942 F.3d at 1236. The Catoosa GOP correctly points out that the statute granting the Republican Party the right to submit questions "to its members"

provides that the "superintendent or Secretary of State *shall* have [the requested] language printed on the ballot form .... " O.C.G.A. § 21-2-284(d) (emphasis added). And, while such language does appear to give the Republican Party unfettered discretion regarding what is included in the questions, this provision should not be understood in a vacuum.

The Supreme Court has recognized that, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown,* 415 U.S. 724, 730 (1974); *see also Anderson,* 460 U.S. at 796 (1983) ("There can be no question about the legitimacy of the State's interest in fostering informed and educated expressions of the popular will in a general election."). States have long outlawed attempts to influence voters within a polling place, and Georgia is no different. *See, e.g., Burson v. Freeman,* 504 U.S. 191, 208-11 (1992) (upholding a state's prohibition of campaigning within 100 feet of a polling place). Georgia law clearly prohibits electioneering or soliciting votes within a polling place. O.C.G.A. § 21-2-414(a) ("[n]o person shall solicit votes in any manner or by any means or method, .. . [w]ithin any polling place"); O.C.G.A. § 21-2-413(d) ("[n]o person, when within the polling place, shall electioneer or solicit votes for any political party

or body or candidate or question, nor shall any written or printed matter be posted within the room, except as required by this chapter").

There is no doubt that the Secretary of State correctly identified the Catoosa GOP's proposed ballot questions as an attempt at influencing voters by strongly implying that the Candidates are "anti-Trump Democrats .... " [R. 54]. And, there is no reason to believe that Georgia's long-standing prohibition on campaigning within a polling place would not apply to a political party's ballot questions. *Cf Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. 214 (1989) ("The State may regulate the flow of information between political associations and their members when necessary to prevent fraud and corruption."); *Minn. Voters All. v. Mansky,* 585 U.S. 1, 15 (2018) ("Casting a vote is a weighty civic act, akin to a jury's return of a verdict, or a representative's vote on a piece of legislation. It is a time for choosing, not campaigning. The State may reasonably decide that the interior of the polling place should reflect that distinction."); *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 363 (1997) ("Ballots serve primarily to elect candidates, not as fora for political expression.").

In short, the Ballot Questions are government speech because all three (3) factors—history, endorsement, control—weigh in favor of such a finding. Accordingly, the Catoosa GOP's Freedom of Speech Claim should be dismissed.

31

## IV. The individually named defendants are entitled to both qualified and absolute immunity.

### A. The individually named defendants are entitled to qualified immunity.

In their Complaint, the Catoosa GOP named Tommy Davis, Nina Crawford, Ron McKelvy, Marvin Cornelison, and Tonya Moore as Defendants in their individual capacities. All of the individual Defendants, however, are entitled to dismissal of the Freedom of Association Claim and Freedom of Speech Claim based upon qualified immunity. Qualified immunity protects from civil liability those government officials who perform discretionary functions if the conduct of the officials does not violate clearly established statutory or constitutional rights which a reasonable person would have known. *Nolin v. Isbell*, 207 F. 3d 1253, 1255 (11th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Put simply, the qualified immunity defense protects from suit "all but the plainly incompetent or those who knowingly violate the law." *Carr v. Tatangelo*, 338 F.3d 1259, 1266 (11th Cir. 2003).

Because government officials are not required to err on the side of caution, qualified immunity is appropriate in close cases where a reasonable official could have believed that his actions were lawful. *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002) (quoting *Marsh v. Butler County Ala.*, 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)). As qualified immunity is an entitlement not to stand trial or face the other

32

burdens of litigation, courts should "grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

The qualified immunity defense requires local government officials to first establish their conduct was within the scope of their discretionary authority, *Lee*, 284 F.3d at 1194, which is demonstrated when their "actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).

Here, the Catoosa GOP alleges that the individual members of the Board of Elections acted unlawfully on three separate occasions and those acts purportedly give rise to the Freedom of Association Claim and the Freedom of Speech Claim. The first alleged wrongful act occurred on March 8 when the Catoosa County Superior Court ordered the Board of Elections to qualify the Candidates pursuant to O.C.G.A. § 21-2-153(c)(2). [R. 16-17; Ex. A]. The second alleged wrongful act occurred on April 2, 2024, when the Board of Elections held a hearing pursuant to O.C.G.A. § 21-2-6. That hearing resulted in the Board of Elections ruling, by a vote of 4-1, that the Candidates were qualified for office. [R. 19-20]. The final alleged wrongful act occurred when the Board of Elections, in reliance on a determination

made by the Georgia Secretary of State, declined to allow the derisive Ballot Questions on the Primary ballot. All alleged wrongful acts undertaken by the Board of Elections were taken pursuant to the Board of Elections' official duties and within the scope of the Board of Elections' authority.

The burden next shifts to the Catoosa GOP to demonstrate qualified immunity is not appropriate using the two-prong test established by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first question is whether the facts alleged show that the Board of Elections violated a constitutional right. *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007). If the Court finds that a violation of a constitutional right has been properly alleged, the second question is whether the right was *clearly established* at the time of the violation. *Lee*, 284 F.3d at 1194; *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (emphasis added). Moreover, a court should conduct its inquiry into the second question in light of the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 201.

Here, as demonstrated above, the acts alleged by the Catoosa GOP do not rise to constitutional violations. The Catoosa GOP does not enjoy a constitutional right to solicit votes or electioneer inside a polling location or on a ballot, and in fact, the Ballots Questions constitute government speech and are not subject to First

Amendment scrutiny. Moreover, the Candidates were qualified and placed on the ballot as a result of a superior court order (which resulted from the Catoosa' GOP unlawful refusal to qualify the Candidates) and pursuant to a state statute that allows for the elections superintendent to qualify partisan candidates for office.

Moreover, even if the Catoosa GOP can show a constitutional violation, they must also be able to cite to cases that demonstrate the Board of Elections' conduct violated a clearly established constitutional right, such that they would understand that their conduct violated that right. Absent this showing, the members of the Board of Elections are entitled to qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). In the Eleventh Circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose. *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n. 4 (11th Cir. 1997).

Furthermore, the alleged violated right must have been clearly established in a more particularized, and therefore more relevant sense, and the test cannot be applied at a high level of generality. *Festa v. Santa Rosa County, Fla.*, 413 Fed. App'x 182, 185, (11th Cir. 2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Put simply, general principles of law are not specific enough to provide fair

warning to a local government official that his conduct was unlawful. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Thus, if case law, in factual terms, has not staked out a bright line, then local government officials are entitled to qualified immunity. *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011).

As to the Freedom of Speech Claim, the Catoosa GOP can point to no case that would put the Board of Elections on notice that any act related to the Ballot Questions was unlawful. And it is undisputed that the Ballot Questions claim is one of first impression for this or any other state or federal court. For the Freedom of Association Claim, the Catoosa GOP rely on several cases, including the trilogy of *Duke* cases and *California Democratic Party v. Jones*, 530 U.S. 567 (2000), all of which are discussed above and none of which place the Board of Elections on notice of any potential constitutional claim. Indeed, the Catoosa GOP's Brief contains no argument suggesting that the individual members of the Board of Elections are not entitled to qualified immunity.

Therefore, any claim brought against the Board of Elections in their individual capacities should be dismissed.

**B. The members of the Board of Elections are entitled to Absolute Immunity for any act related to the April 2 hearing.**

To the extent the Catoosa GOP's Freedom of Association Claim rests on the Board of Elections ruling at the April 2 hearing, the individual board members are entitled to absolute immunity. The Supreme Court has noted that "few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553-554 (1967). The Supreme Court has also extended absolute immunity to "certain others who perform functions closely association with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). In applying absolute immunity to non-judges, the Supreme Court has applied a "functional" approach to immunity law—that absolute immunity "flows not from rank or title or location within the Government but from the nature of the responsibilities of the individual official." *Id* at 201 (internal citations omitted). Specifically, the Supreme Court utilizes a number of factors as "characteristic of the judicial process and to be considered in determining absolute as contrasted with qualified immunity:

(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal."

*Id*. at 202.

The application of these factors to the April 2 hearing held by the Board of Elections favors conferring absolute immunity to the individual board members for the decision handed down on April 2. The Catoosa GOP concedes that the Board of Elections conducted a hearing on April 2 to hear elector challenges filed pursuant to O.C.G.A. § 21-2-6(b). [R. 18-20]. Notably, the elector challenge statute contemplates an adversarial, contested hearing. Subsection (b) provides that the

> "superintendent shall notify the candidate in writing that his or her qualifications are being challenged and the reasons therefor and shall advise the candidate that he or she is setting a hearing on the matter and shall inform the candidate of the date, time, and place of the hearing."

O.C.G.A. § 21-2-6(b). Importantly, whatever decision is made by the superintendent (or Board of Elections in Catoosa County), that decision is subject to the appeal provisions of subsection (e). Specifically, the elector or the candidate "shall have the right to appeal the decision of the superintendent by filing a petition in the superior court of the county in which the candidate resides within ten days after the entry of the final decision by the superintendent." O.C.G.A. § 21-2-6(e).

The Catoosa GOP cannot dispute that several electors, including Appellant Hildreth, exercised (or at least attempted to exercise) their appellate rights and those elector challenges were appealed to the Catoosa County Superior Court and that

appeal has been dismissed with prejudice. [Ex. B]. The appellate process set forth in O.C.G.A. § 21-2-6(e) is similar to appeals from other lower judicatories in Georgia, such as magistrate court and probate court, and is governed by Chapter 3 (Superior and State Court Appellate Practice) of Title 5 of the Official Code of Georgia.

Because the Board of Elections served in a "quasi-judicial" capacity at the April 2 Hearing, the individual board members are entitled to absolute immunity from any claim based on that decision.

## CONCLUSION

For the foregoing reasons, the district court's September 9, 2024, Order dismissing the Appellants' Complaint should be AFFIRMED.

Respectfully submitted this 2nd day of February, 2025.


                                        PATTY & YOUNG, ATTORNEYS AT LAW

                                        /s/Christopher M. Harris
7731 Nashville Street                   Christopher M. Harris
Ringgold, Georgia 30736                 Ga. Bar No. 567366
(706) 935-9100                          C. Chad Young
chrisharris@pattylaw.com                Ga. Bar No. 781732
chadyoung@pattylaw.com

                                        *Counsel for Appellees*

# CERTIFICATE OF COMPLIANCE

In compliance with Federal Rule of Appellate Procedure 27(d)(2), the undersigned counsel hereby certifies the following:

(1)     This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,031words, excluding those parts exempted by Fed. R. App. P. 32(f).

(2)     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 with size 14 point Times New Roman type style.

PATTY & YOUNG, ATTORNEYS AT LAW

/s/Christopher M. Harris

7731 Nashville Street
Ringgold, Georgia 30736
(706) 935-9100
chrisharris@pattylaw.com
chadyoung@pattylaw.com

Christopher M. Harris
Ga. Bar No. 567366
C. Chad Young
Ga. Bar No. 781732

*Counsel for Appellees*

**CERTIFICATE OF SERVICE**

I certify that I filed a copy of the foregoing **Brief of Appellees** with the

Appellate CM/ECF system on February 2, 2025. All counsel of record are registered

CM/ECF users, and service will be accomplished by the CM/ECF system.

February 2, 2025.


PATTY & YOUNG, ATTORNEYS AT LAW

7731 Nashville Street
Ringgold, Georgia 30736
(706) 935-9100
chrisharris@pattylaw.com
chadyoung@pattylaw.com

/s/Christopher M. Harris
Christopher M. Harris
Ga. Bar No. 567366
C. Chad Young
Ga. Bar No. 781732

*Counsel for Appellees*

## IN THE SUPERIOR COURT OF CATOOSA COUNTY
## STATE OF GEORGIA

STEVEN M. HENRY, LARRY C.    *
BLACK, JEFF LONG, and VANITA    *
HULLANDER,    *
     *Petitioners*,    *
   *
v.    *
   *
CATOOSA COUNTY REPUBLICAN    *
PARTY, an unincorporated assoc.;    *
et al.,    *
     *Respondents*.    *
   *

Civil Action File Nos:

SUCV2024000205
SUCV2024000208
SUCV2024000211
SUCV2024000213



## ORDER ON RESPONDENTS' MOTION TO STAY PENDING APPEAL
## AND INJUNCTION REGARDING QUALIFYING

On March 5, 2024, this Court entered a temporary restraining order, enjoining Respondents from prohibiting the qualifying of the four Petitioners in these cases as candidates for the Republican nomination for various positions on the county commission. Respondents were served with the TRO and continued to refuse to qualify the Petitioners. Respondents then filed a motion, seeking to lift the TRO on March 6, 2024. Petitioners responded on March 7, 2024, and the Court held an evidentiary hearing on the matter on March 7, 2024 at 1:00pm. The Court then entered another written order modifying the TRO requiring compliance and imposing specific penalties for noncompliance.

The Court held a compliance hearing at 8:30am on March 8, 2024, recognizing that the deadline for qualifying is 12:00pm on March 8, 2024, and time was of the essence. Thus, this Court has now held two hearings where counsel for Respondents was present. The evidence and argument presented at those hearings and in the

1

Exhibit A

briefing demonstrates that Respondents have utterly failed to comply with Georgia law and this Court's clear direction. This Order supplements the prior orders in this case.

As this Court has said before, this is a simple case. The Court has personal jurisdiction over the Respondents because they have been served according to the service affidavits on file with the Court.

The Court initially finds that Petitioners are highly likely to prevail on the merits. Petitioners are four candidates who the evidence shows have met the requirements of O.C.G.A. § 21-2-153. The evidence before the Court demonstrates that the sole basis for Respondents refusing to qualify Petitioners is due to a lack of a "Qualifying Affidavit" from Respondents, not any other basis under O.C.G.A. § 21-2-153. The evidence showed that Respondents have no standard or process they follow, but that each member of the executive committee makes their own subjective determination about whether to issue a Qualifying Affidavit. The possession of a Qualifying Affidavit is not a procedural rule because "[p]rocedural law is that law which *prescribes the methods* of enforcement of rights, duties, and obligations." *McConville v. Cotton States Mut. Ins. Co.*, 315 Ga. App. 11, 13, 726 S.E.2d 481 (2012) (quoting *Polito v. Holland*, 258 Ga. 54, 55, 365 S.E.2d 273 (1988)) (emphasis added). Procedural rules do not involve substantive determinations. Respondents admit that Petitioners complied with all the requirements of the rules short of Respondents issuing a "Qualifying Affidavit." And they admit that the denials of the "Qualifying

2



Affidavits" were based on their subjective determinations and *substantive* issues like disagreements on tax policy and property rights.

Further, the Catoosa County Republican Party rules presented as Petitioners' Exhibit 1 do not bear any marks of certification beyond the photocopied signature of the chair and secretary. There is no attestation that Petitioners Exhibit 1 are the adopted rules or any other certification that would be required by O.C.G.A. § 21-2-111(c) and therefore said rules are void pursuant to that section, as this Court previously ordered.

Finally, the evidence showed the rules are not "consistent with the law and the rules and regulations of the state executive committee" of the Georgia Republican Party because the state executive committee rules have no provision regarding pre-approval of candidates for other offices. O.C.G.A. § 21-2-111(c). Thus, for all of those reasons, as this Court previously found, the rules cannot enforce any procedures. The lack of any reasonable basis for Respondents refusing to qualify Petitioners demonstrates a likelihood of success.

The Court also finds an immense threat of irreparable harm for Petitioners in Respondents failing to qualify them. The Court further finds that Respondents have adequate remedies under law because there are multiple remedies available to Respondents if they wish to challenge candidate qualifications after qualifying takes place. O.C.G.A. §§ 21-2-6, 21-2-522; *Camp v. Williams*, 314 Ga. 699, 701, 879 S.E.2d 88, 90 (2022). There is no basis to conclude that Respondents would be forced to engage in compelled speech. The point of a primary is to determine the "party's

Exhibit A

ambassador to the general electorate." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000). A candidate seeking that nomination does not have the endorsement of the Republican Party on that candidate until they win a primary decided by the voters, not a group of party officials.

The *Duke* case cited by Respondents does not require a different result because the circumstances were not similar. In *Duke v. Massey*, 87 F.3d 1226 (11th Cir. 1996), the candidate who was denied was attempting to gain access to the presidential preference primary ballot, not the general primary ballot. Candidates do not qualify under the procedures of Georgia law at issue here to gain access to the presidential preference primary ballot. Instead, in that context, the "state executive committee of each party" submits names to the Secretary of State. O.C.G.A. § 21-2-193; *Duke*, 87 F.3d at 1229. For presidential preference primaries, the statute committed the selection process to the party executive committee—which is a completely different process than the one at issue in this case. Further, the point of a presidential preference primary is the allocation of party delegates, not ballot access for a general election. *See Duke v. Cleland*, 783 F. Supp. 600, 604 n.5 (N.D. Ga. 1992). Respondents read too much into *Duke* because the procedures are completely different and it is readily distinguishable from this situation.

Thus, Respondents have shown no basis for any harm to themselves, Petitioners have no remedies if Respondents continue in their refusal to follow the law and qualify them as candidates, and the Court finds that the threatened injury to Petitioners far outweighs any trivial burden on Respondents.

4



Further, the Court finds that the public interest is served by entering an injunction and these penalties. Voters are entitled to vote for and against candidates that meet the qualifications for office. This is an emergency matter because the deadline for qualifying expires today at noon. This Court ordered compliance four days ago. This Court's orders must be obeyed. Thus, the public interest is strongly in favor of allowing the people to have their voices heard in elections.

No party disputed that Petitioners have been unable to qualify despite continuing attempts after this Court's order yesterday. Indeed, the Chair of the Catoosa County Republican Party testified under oath that she would refuse to obey an order from this Court requiring Respondents to qualify Petitioners. Thus, regarding compliance with its prior orders, this Court hereby **ORDERS** that the fines required in the March 7, 2024 Order began at 3:14pm on March 7, 2024 and will continue to accrue continuously through noon today, which is the conclusion of qualifying by statute. The Court will set another date for a hearing on the injunction and motion for contempt filed by Petitioners.

Further, based on the foregoing, Respondents have shown no basis for a stay pending appeal. As discussed above, there is no basis for determining that Respondents would suffer any injury by following Georgia law—a law they have not challenged as unconstitutional. There is also no basis for a stay pending appeal because direct appeals of temporary restraining orders are not permitted and thus the Notice of Appeal filed by Respondents is not a correct method of seeking appellate review. Valid appeals of temporary restraining orders are by application, *see* O.C.G.A.

5

Exhibit A

§ 5-6-35. Because the Notice of Appeal is void as an improper attempt to appeal a temporary restraining order and thus provides no basis for a stay, this Court hereby **DENIES** Respondents' Motion for a Stay Pending Appeal and the Court **STRIKES** the Notice of Appeal from the record.

Regarding the Petitioners' ability to qualify, the Court has considered its options in light of the failure of Respondents to obey its orders and the clear dictates of Georgia law. Petitioners must have a remedy. The Court recognizes that "[a] mandatory injunction is an extraordinary remedy, one of the most powerful a court can issue. It is for that reason called the 'strong arm of equity.'" *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 510, 556 S.E.2d 114, 124 (2001). While the power to grant injunctions "shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to," O.C.G.A. § 9-5-8, the Court finds that this is such a "clear and urgent" situation. This case is unprecedented given the intransigence of Respondents to the law and this Court's repeated directives.

To that end, the Court crafts a remedy for Petitioners that is "crafted in a manner that is the least oppressive to the defendant while still protecting the valuable rights of the plaintiff." *Prime Bank v. Galler*, 263 Ga. 286, 289, 430 S.E.2d 735, 739 (1993). The Court thus looks to other provisions of the Election Code for options about how to fashion a remedy.

Under O.C.G.A. § 21-2-153(c)(2), if a political party does not designate a qualifying party official within sufficient time, "the election superintendent of the county shall qualify candidates on behalf of such party." While the statute also

6



requires notice, this is an unprecedented situation when a county political party refuses to qualify candidates for no reason other than the lack of approval for that candidate by county party officials.

The Court hereby utilizes this existing statutory process to craft a remedy for Petitioners. Pursuant to the order previously announced in open court at 8:45am, the Court hereby memorializes that oral order and **ORDERS** that each of the Petitioners is entitled to qualify with the Catoosa County election superintendent at their offices pursuant to O.C.G.A. § 21-2-153(c)(2) as if the county political party had not provided sufficient notice and as if the three-day notice had been provided. The Court crafts this injunction so that Petitioners can be listed as candidates on the May 2024 Republican general primary ballot if they qualify with the superintendent as outlined here before the close of qualifying at noon today.

All other remaining provisions of this Court's orders of March 5 and 7, 2024, shall remain in full force and effect until modification by this Court within thirty (30) days of March 5, 2024 at a subsequent hearing. That hearing is set for March 27, 2024 at 9:00am at the Catoosa County Superior Court.

**SO ORDERED** this 8th day of March, 2024 *nunc pro tunc* to 8:45am on said day.

_____
DON W. THOMPSON
JUDGE OF SUPERIOR COURT
LOOKOUT MOUNTAIN JUDICIAL CIRCUIT

Exhibit A

Order Prepared By:

*/s/Arch Farrar*

*/s/Catherine F. Jackson*

*/s/Alan Norton*

*/s/Lawrence A. Stagg*

*/s/Bryan P. Tyson*

8

Exhibit A

⚫ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CATOOSA COUNTY, GEORGIA

**SUCV2024000323**

**MAY 17, 2024 12:08 PM**

*Tracy Brown*
Tracy Brown, Clerk
Catoosa County, Georgia

## IN THE SUPERIOR COURT OF CATOOSA COUNTY

## STATE OF GEORGIA

JAMES COLES, MARY COLES, BRITT
FANT, RUTH FANT, JOANNA HILDRETH,
CHARLIE LAMAR, CHRISTINE LAWSON,
ADRIANNE KITTLE, REGINA GRAY,
SHERRE BALES, MARY BETH BUGEA
And DEBBIE MORRISON,

      Petitioners,

v.

CATOOSA COUNTY BOARD OF ELECTIONS,
RON MCKELVY, NINA CRAWFORD, MARVIN
CORNELISON, TOMMY DAVIS, JENNIFER
MOTTER,  TONYA MOORE, STEVEN HENRY,
LARRY BLACK, VANITA HULLANDER and
JEFFREY LONG,

      Respondents.

CASE NUMBER
SUCV2024000323

**PETITION FOR REVIEW OF APRIL 2, 2024 DECISION OF THE CATOOSA
COUNTY BOARD OF ELECTIONS REGARDING THE CANDIDACIES OF STEVEN
HENRY, LARRY BLACK, VANITA HULLANDER, and JEFFREY LONG:  ORDER ON
RESPONDENTS' MOTION to DISMISS**

Exhibit B

The Court conducted a hearing on Tuesday, May 14, 2024 at 9:30 a.m. No party or their counsel had requested a court reporter, even though the Order (dated 26 April, 2024) setting the hearing included the following language: "Any party requesting takedown shall be responsible for arranging for a court reporter."

The hearing was open to the public. A news organization had properly sought permission under URSC 22 to use video and audio taping equipment. The Court granted the request.

The Court denied counsel for Petitioners' request to use an audio recorder after Attorney Katherine Bernard volunteered that she had been recording the proceedings. The Court reminded counsel that they had advance notice to request a court reporter.

There were two distinct, but related, issues before the Court: 1) Were the correct parties joined to adjudicate a review of the Catoosa County Board of Elections? and 2) Was the Petition filed within the proper time limit?

Both questions can be answered simply by a reading of the two applicable statutes and a review of the timeline of events.

A hearing was held in the main courtroom of the Catoosa County Courthouse on April 2, 2024. The Catoosa County Board of elections heard challenges to the candidacy of four people pursuant to OCGA Section 21-2-6. Those four people were ordered to be qualified as candidates for the Catoosa County Commission pursuant to order of Judge Don Thompson in a civil action that is apparently on appeal at this time. Based on the pleadings in this action, those four people are STEVEN HENRY, LARRY BLACK, VANITA HULLANDER, and JEFFREY LONG. The Board of Elections certified their candidacy on a 4-1 vote.

The initial pleadings in this civil action named as Defendants the following entity and persons: CATOOSA COUNTY BOARD OF ELECTIONS, RON McKELVY, NINA CRAWFORD, MARVIN CORNELISON, TOMMY DAVIS, JENNIFER MOTTER, and TONYA MOORE. None of the candidates in dispute were ever named as parties until April 25, 2024.

OCGA Section 21-2-6(e) states in relevant part that "The elector filing the challenge…shall have the right to appeal the decision of the superintendent by filing a petition in the superior court of the county in which the candidate resides *within ten days* after the entry of the final decision by the superintendent." The appeal was filed as a petition to the Superior Court nine days after the 4-1 decision of the Board of Elections to affirm the candidacy of candidates Henry, Black, Hullander, and Long.

However, OCGA Section 5-3-7(d) states that "any…member of a lower judicatory that rendered the final judgment under review shall not be a party, defendant, or respondent in a petition for review." Therefore, none of the original parties defendant should have ever been named, as counsel admitted that the original named defendants were either members of the Board of Elections as citizen representatives or the Catoosa County election superintendent (Tonya Moore).

Exhibit B

The proper respondents were not named as such until April 25, 2024 in an amended Petition.  As such, the Appeal must be dismissed.  MOTION TO DISMISS is granted this 17th day of May, 2024.

David K Smith, Senior Judge of Superior Court

Lookout Mountain Judicial Circuit

Sitting by Order of Designation

SUCV2024000323

Exhibit B